NO. 07-08-0444-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

APRIL 23, 2009
                                       ______________________________

THE CITY OF BORGER, APPELLANT

V.

VICTOR GARCIA AND WIFE BECKY GARCIA, AND
LORENZO RAMOS AND WIFE SILVIA RAMOS, APPELLEES
_________________________________

FROM THE 84TH DISTRICT COURT OF HUTCHINSON COUNTY;

NO. 37,431; HONORABLE DAVID GLEASON, JUDGE
_______________________________


Before CAMPBELL and HANCOCK and PIRTLE, JJ.
OPINION
          Appellant, City of Borger (City), appeals the trial court’s order denying the City’s Plea
to the Jurisdiction


 in relation to a lawsuit brought by appellees, Victor and Becky Garcia
and Lorenzo and Silvia Ramos (collectively, “appellees”), seeking recovery for property
damage to appellees’ homes caused by a flood. We reverse the trial court’s order and
render judgment dismissing appellees’ suit with prejudice.
Background
          Appellees’ homes were damaged when several inches of rain fell on the area of
their homes over the course of a couple of hours on September 6, 2006. Flooding had
occurred in the area in the past. However, in April or May of 2006, the City had rerouted
the drainage system serving the area and installed larger drain pipes. From the time that
the new drainage system project was completed until the September 6th flood event, the
drainage system had adequately handled rainfall and no flooding had been reported in the
area.
          Appellees filed claims for a damaging of their property without just compensation
against the City, as authorized by article I, section 17, of the Texas Constitution, on
December 21, 2006. See Tex. Const. art. I, § 17. On July 23, 2007, the City filed a Plea
to the Jurisdiction, supported by the affidavit of the city’s engineer, contending that, inter
alia, appellees’ claims do not state facts sufficient to invoke the trial court’s jurisdiction over
the case. Appellees amended their petition and filed evidence of jurisdictional facts with
their response to the City’s plea. Subsequently, both the City and appellees filed additional
evidence of jurisdictional facts. Apparently, on or about July 1, 2008, the trial court heard
the City’s Plea to the Jurisdiction, granted the plea, but afforded appellees an opportunity
to amend their pleadings.


 Appellees amended their pleading. The City again filed a plea
to the jurisdiction. After considering the pleadings and the arguments of counsel, the trial
court denied the City’s plea on October 9, 2008. From this denial, the City timely filed the
present interlocutory appeal.
          By one issue, the City contends that the trial erred in denying the City’s plea to the
jurisdiction based on the appellees’ failure to plead that their property was taken for or
applied to a public use.


 Appellees contend that their live pleading alleges a claim for a
taking under article I, section 17, of the Texas Constitution. Appellees pled that their
property was damaged for a public use because (1) the damage arose out of or was
incident to a public work, (2) the City used less costly materials and failed to adequately
plan the drainage system, which resulted in saving public funds, and (3) the design and
installation of the drainage system protected other homeowners from the flooding suffered
by appellees. 
Standard of Review
          The City’s issue calls on us to review the trial court’s denial of the City’s plea to the
jurisdiction. A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat
a cause of action without regard to whether the claims asserted have merit. Bland Indep.
Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000). When a plea to the jurisdiction
challenges the pleadings, we determine if the pleader has alleged facts that affirmatively
demonstrate the court’s jurisdiction to hear the cause. Tex. Dep’t of Parks & Wildlife v.
Miranda, 133 S.W.3d 217, 226 (Tex. 2004). We are to construe the pleadings liberally in
favor of the plaintiff and look to the pleader’s intent. Id. Whether a pleader has
affirmatively demonstrated a trial court’s jurisdiction is a question of law reviewed de novo. 
Id. However, a court deciding a plea to the jurisdiction is not required to look solely to the
pleadings, but may consider evidence and must do so when necessary to resolve the
jurisdictional issues raised. Bland Indep. Sch. Dist., 34 S.W.3d at 555. Thus, in deciding
whether a plaintiff has affirmatively demonstrated the court’s jurisdiction to hear the cause,
we consider the facts alleged by the plaintiff and, to the extent it is relevant to the
jurisdictional issue, the evidence submitted by the parties. See State Dep’t of Crim. Justice
v. Miller, 51 S.W.3d 583, 587 (Tex. 2001).
          An appellate court’s task in reviewing a ruling on a plea to the jurisdiction is to
determine whether the plaintiff pled facts that, when taken as true, support jurisdiction in
the trial court. Miranda, 133 S.W.3d at 226; Tex. Ass’n of Bus. v. Tex. Air Control Bd., 852
S.W.2d 440, 446 (Tex. 1993). However, the reviewing court should not address the merits
of the case. Bland Indep. Sch. Dist., 34 S.W.3d at 554. 
Law and Analysis
          The takings clause of the Texas Constitution provides that “[n]o person’s property
shall be taken, damaged, or destroyed for or applied to public use without adequate
compensation being made . . . .” Tex. Const. art. I, § 17. To recover under the takings
clause, a plaintiff must establish that: (1) a governmental unit intentionally performed
certain acts, (2) which resulted in a “taking” of the plaintiff’s property, (3) for public use. 
See City of Abilene v. Smithwick, 721 S.W.2d 949, 951 (Tex.App.–Eastland 1986, writ ref’d
n.r.e.) (citing Steele v. City of Houston, 603 S.W.2d 786, 788-92 (Tex. 1980)). The City’s
plea to the jurisdiction challenged only the third element of public use, so we will constrain
our analysis of the jurisdictional issue to whether appellees pled sufficient facts to establish
that their property was damaged for or applied to public use.



          A constitutional taking for public use occurs “only when there results to the public
some definite right or use in the business or undertaking to which the property is devoted.” 
Borden v. Trespalacios Rice & Irrigation Co., 98 Tex. 494, 86 S.W. 11, 14 (1905); Loyd,
956 S.W.2d at 128. Judicial decisions have narrowed the meaning of public use to those
situations in which the damages are incident to the construction and operation of public
works. Id. The question of what constitutes a public use is a question of law for the courts. 
Dyer v. Tex. Elec. Serv. Co., 680 S.W.2d 883, 884 (Tex.App.–El Paso 1984, writ ref’d
n.r.e.). The key consideration in assessing whether a particular taking was for a public use
is whether the public is bearing a cost for which it received a benefit. See Tarrant Reg’l
Water Dist. v. Gragg, 151 S.W.3d 546, 554 (Tex. 2004).
          Looking to appellees’ factual pleadings of how their property was taken for public
use, we note that appellees allege three bases: (1) the damage arose out of or was
incident to a public work, (2) the City used less costly materials and failed to adequately
plan the drainage system, which resulted in a savings of public funds, and (3) the design
and installation of the drainage system protected other homeowners from the flooding
suffered by appellees. 
          In their first basis for meeting the public use element, appellees pled that the
damage to their property arose out of or was incident to a public work and, therefore, was
for a public use. See Loyd, 956 S.W.2d at 128. While we agree with appellees that
damage arising out of or that is incident to public works will generally meet the third
element of a takings claim, appellees have failed to plead facts sufficient to establish that
the property damage that they suffered arose out of or were incident to a public work. This
is so because appellees have failed to allege any facts creating a causal nexus between
the property damage and the City’s drainage system. Appellees’ only allegation relating
to causation is that “[t]he street drainage system designed and maintained by THE CITY
failed to prevent and possibly exacerbated the referenced flooding.” However, appellees
have alleged no facts that would support their conclusion that the drainage system
somehow exacerbated the flooding or, other than the mere fact that appellees suffered
property damage, that the drainage system was not effective in preventing flooding. The
City was not required to provide drainage adequate for all floods that may occur. Norman
& Schaen, Inc. v. City of Dallas, 536 S.W.2d 428, 430 (Tex.Civ.App.–Dallas 1976, writ ref’d
n.r.e.). In fact, the only duty imposed upon the City in constructing or maintaining the
drainage system was that it not increase the flow of surface waters across appellees’
property. Id. at 429-30. Appellees have made no allegation that the City’s redesign and
installation of the drainage system caused an increased flow of surface waters across their
property. Thus, appellees have wholly failed to plead facts that would establish that the
property damage they suffered arose out of or was incident to a public work.
          Appellees’ second basis for establishing public use is that the City used less costly
materials and failed to adequately plan the drainage system resulting in a savings of public
funds. There are no facts pled nor jurisdictional evidence presented that would establish
that the City used less costly materials in the drainage system. There is, however, some
evidence in the record that the City may not have adequately planned the drainage system. 
The evidence that raises a fact issue in regard to the adequacy of the planning of the
drainage system, at best, raises a fact issue as to whether the City was negligent in its
design of the drainage system. This is significant because (1) the design of a street
drainage system is a discretionary act for which governmental immunity has not been
waived, see Tex. Civ. Prac. & Rem. Code Ann. § 101.056 (Vernon 2005), and (2) the
particular design and construction of the drainage system selected by the City is within the
City’s discretion and may not be reviewed and revised by the courts in a piecemeal
fashion, see Norman & Schaen, Inc., 536 S.W.2d at 430. Further, even if we were to
accept the savings of public funds as a public use, the appellees have alleged no facts nor
is there any evidence in the record that would establish a causal connection between the
supposed savings on the drainage system and the damage to appellees’ property. Thus,
we conclude that the purported savings of public funds in the design and construction of
the drainage system is insufficient to establish that appellees’ property was taken for a
public use.
          In addition, sound public policy would militate against the establishment of the public
use element of a takings claim based on a savings of public funds. To allow the
establishment of this element by proof of a cost savings would be a judicial interference
in municipal fiscal policy, which would violate the separation of powers doctrine. Further,
for a city to protect itself from potential litigation arising out of a public works project, the
city would have to accept the highest bid submitted and would have to ensure that the most
expensive materials were used. To paraphrase the Dallas Court of Appeals, since cheaper
protection against floods is better than none at all, if the city undertakes to provide
drainage, it has no duty to provide facilities adequate for all floods that may reasonably be
anticipated because the existence of such liability would tend to deter the city from
providing any protection from flooding at all. See id. 
          Finally, appellees pled that the design and installation of the drainage system
protected other homeowners in the neighborhood from the flooding suffered by appellees. 
Certainly, if the pleaded facts and the jurisdictional evidence established that the City
intentionally diverted flood waters to appellees’ property to prevent flooding of other
neighborhood property owners, appellees would have stated a claim for a taking that would
withstand a plea to the jurisdiction. However, appellees allege no facts that would
establish that the City used their property to protect other neighborhood property owners. 
Much as is the case with appellees’ assertion that their property damage arose from a
public work, appellees appear to conclude that the City diverted water onto their property
based solely on the fact that their property sustained damage while other neighborhood
properties did not. Because appellees fail to allege any facts to establish that flood waters
were diverted onto their property to protect the property of others, we conclude that
appellees have failed to allege a public use for which their property was taken.
          Further, as it relates to appellees’ diversion of water contention, the City’s intended
use of the drainage system is inextricably linked to appellees’ allegation of a public use. 
If the City intended to divert surface waters onto appellees’ property to protect other
homeowners, then appellees have a claim for a taking. See id. On the other hand, if
surface waters were not intentionally diverted to appellees’ property, then it cannot be said
that appellees’ property was taken for a public use. Stated another way, assuming that
there was, in fact, a diversion of surface waters onto appellees’ property, if such a diversion
was not intended by the City, appellees would possess a claim for negligence, but would
not be able to establish that the unintended diversion of surface waters onto their property
was for a public use. See Gragg, 151 S.W.3d at 555 (“we have sought objective indicia
of intent in particular contexts to determine whether property has been taken or damaged
in furtherance of the public interest.”). In the present case, the only evidence contained
in the record relating to the whether the City used appellees’ property to protect other
property owners is the statement of the city engineer that he was not aware of any plans
by the City to divert water onto the appellees’ property to benefit the public. 
          Because we agree with the City that appellees have failed to allege facts or present
evidence establishing that the City damaged their property for public use, we sustain the
City’s issue, reverse the trial court’s order denying the City’s plea to the jurisdiction, and
dismiss appellees’ suit.
Prejudice
          Ordinarily, when a plaintiff is capable of remedying a jurisdictional defect in his
pleading, dismissal with prejudice is improper. See Harris County v. Sykes, 136 S.W.3d
635, 639 (Tex. 2004). However, when a plaintiff has been provided a reasonable
opportunity to amend his pleading, but the amended pleading still does not allege facts that
would constitute a waiver of immunity, the court should dismiss the case with prejudice. 
Id. This is so because the plaintiff should not be permitted to relitigate jurisdiction once
that issue has been finally determined. Id.
          In the present case, the trial court granted an earlier plea to the jurisdiction filed by
the City, but afforded appellees an opportunity to amend their pleading. The appellees did
amend their pleadings and it is this amended pleading that this Court is reviewing in the
present appeal. Because the issue of the trial court’s jurisdiction to hear appellees’ suit
has been finally determined after appellees were afforded an opportunity to and did amend
their pleading, our judgment dismissing appellees’ case is with prejudice.Conclusion
          For the foregoing reasons, we reverse the trial court’s order denying the City’s plea
to the jurisdiction and render judgment dismissing appellees’ suit for want of jurisdiction
with prejudice.

                                                                           Mackey K. Hancock

                                                                                     Justice